UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RADLEY BRADFORD,** individually, and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**NYLIFE SECURITIES LLC,** a New York company,<br><br>　　　　　Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

　　　　Plaintiff Radley Bradford ("Plaintiff" or "Bradford") brings this Class Action Complaint and Demand for Jury Trial against Defendant NYLIFE Securities LLC ("Defendant" or "NYLIFE") to stop the Defendant from violating the Telephone Consumer Protection Act by placing telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff Bradford, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

　　1.　　Plaintiff Radley Bradford is a resident of Houston, Texas.

　　2.　　Defendant NYLIFE is a Delaware registered company headquartered in Madison Ave, New York. Defendant NYLIFE conducts business throughout this District, New York, and the US.

## JURISDICTION AND VENUE

　　3.　　This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant since the Defendant has its headquarters in this District, and the Venue is proper because Defendant resides here and a substantial part of the conduct giving rise to this action was directed towards the Plaintiff by the Defendant from this District.

**INTRODUCTION**

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in July 2021 alone, at a rate of 136.3 million calls per day. www.robocallindex.com (last visited August 16, 2021).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

16. Defendant NYLIFE provides brokerage services and investment options to consumers across the U.S.[3]

17. Defendant NYLIFE engages in telemarketing to solicit business from consumers who have never provided consent to Defendant NYLIFE to call them.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/nylife-securities-llc/about/

18. In cold calling the consumers, Defendant NYLIFE places multiple unsolicited telemarketing calls to phone numbers that are registered on the National DNC, such as the Plaintiff's phone number.

19. Several of the Defendant's employees have complained about the telemarketing and cold calling practices of the Defendant. For example:

- Dec 5, 2021 - Financial Advisor in Shreveport, LA

   ○ Recommend   ○ CEO Approval   ○ Business Outlook

   **Pros**
   Retirement package is great. Training is also abundant. Training managers will help you get started by going on your first few appointments with you.

   **Cons**
   The insurance world is extremely difficult to make it in, especially with NYLife. You continually have to push whole life, because that's where the $ is. The small term policies that are sufficient for most people just don't pay enough. This job really is all about making cold calls and sales. Basically you need to be 1. an influential person who 2. knows a LOT of people with 3. a LOT of money. If you don't have ALL 3 of those, you're probably better off looking elsewhere. [4]

- Nov 17, 2021 - Sales Representative in Chicago, IL

   ○ Recommend   ○ CEO Approval   ○ Business Outlook

   **Pros**
   If you could stay consistent on sales, you could make a fortune

   **Cons**
   Challenging. You must find people. [5]

---

[4] https://www.glassdoor.com/Reviews/New-York-Life-Reviews-E2915_P2.htm?filter.iso3Language=eng
[5] https://www.glassdoor.com/Reviews/New-York-Life-Reviews-E2915_P6.htm?filter.iso3Language=eng

4

- ### Sink or swim
  Insurance Agent (Former Employee) - Bakersfield, CA - October 9, 2021

  Not a company that promotes teamwork. Experienced agents don't provide any assistance without a percentage of the deal. Money can be made if you want to spend every day cold calling or striking up a conversation with strangers in order to get them to sit down with you for an appointment. The company doesn't provide any leads or budget money for presentation, client lunches, etc. The agent is expected to pay for all expenses, and after a year I ended up with $20K in credit card debt. Not a sustainable business practice for 9 out of every 10 agents they recruit as pay is commission only. [6]

- Current Employee

  ### Good starter job
  Oct 14, 2021 - Financial Advisor in Downers Grove, IL

  ✗ Recommend     ✓ CEO Approval     ✓ Business Outlook

  **Pros**
  Chance to make a lot of money. Make your own schedule

  **Cons**
  Cold calling, only commission pay. [7]

- ### Very stressful sales job
  Sales Agent (Former Employee) - Oxnard, CA - November 28, 2021

  Worked at NYL as Agent which meant constantly canvassing or cold calling for clients. It was very stressful with lots of pressure from Sales Mgr to hustle and sign business- which was the only way to get a commission. Went many months draining my savings. It was depressing after a while and I quit for a salaried job. We were warned to have our own monies to "bide our time" before sales commissions rolled in. They never did. There were weekly meetings and training. It was a lot of running around town w/no results. You could schedule personal appointments but would be expected to work late. [8]

---

[6] https://www.indeed.com/cmp/New-York-Life/reviews?fjobtitle=Insurance+Agent
[7] https://www.glassdoor.com/Reviews/New-York-Life-Reviews-E2915_P12.htm?filter.iso3Language=eng
[8] https://www.indeed.com/cmp/New-York-Life/reviews

5

- > **Lots of training and support for advancement.**
  > Licensed Insurance Agent (Current Employee) - Dallas, TX - September 24, 2021
  >
  > It is a great company to work for and start your own business basically while using their logo and core values. The company provides lots of training and maintains a high level of professionalism. It is a great work environment, and management is extremely supportive.
  >
  > ✓ **Pros**
  > It is a great work environment, and management is extremely supportive.
  >
  > ✗ **Cons**
  > Fully commission based, extensive prospecting, cold calling, hours may vary depending on your clients schedules [9]

20.  Numerous consumers have posted complaints about receiving unwanted solicitation calls from Defendant NYLIFE, like Plaintiff Bradford.[10]

21.  In response to these unwanted calls, Plaintiff Bradford files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

### PLAINTIFF BRADFORD'S ALLEGATIONS

22.  Plaintiff Bradford registered his landline phone number on the DNC on March 21, 2019.

23.  Plaintiff Bradford's phone number is not associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use.

24.  In October 2021, Plaintiff Bradford began getting calls from the phone number 847-651-9007 to his landline phone.

---

[9] https://www.indeed.com/cmp/New-York-Life/reviews?fjobtitle=Insurance+Agent, https://www.shouldianswer.com/phone-number/8002492640, https://www.nomorobo.com/lookup/520-518-7402
[10]

25. Plaintiff received phone calls from the above number to his phone number on the following dates and times:

    a. On October 21, 2021, at 12:39 PM,

    b. On October 25, 2021, at 3:38 PM,

    c. On November 8, 2021, at 3:34 PM, and

    d. On December 8, 2021, at 3:59 PM.

26. Plaintiff Bradford tried calling the phone number 847-651-9007 back to find out who was responsible for these calls. Plaintiff called the number twice on November 8, 2021 and spoke to an agent who identified himself as Steven Brown from Defendant NYLIFE. The agent confirmed that he was trying to call the Plaintiff regarding Life Insurance.

27. On December 8, 2021, Plaintiff received another call from the same phone number 847-651-9007 and called it back at 8:36 PM and spoke to the same agent, Steve. Plaintiff requested the agent to take his phone number off the calling list.

28. The phone number 847-651-9007 belongs to Steven Brown, who is an employee of Defendant NYLIFE[11] and is licensed to sell their insurance products to consumers:

---

[11] https://www.linkedin.com/in/steve-brown-511206176/



[12]

29. The unwanted calls that Plaintiff received from Defendant NYLIFE, as alleged herein, have harmed Plaintiff Bradford in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

30. Seeking redress for these injuries, Plaintiff Bradford, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited calls to telephone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

31. Plaintiff Bradford brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

---

[12] https://www.newyorklife.com/agent/sbrown12

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time on their residential telephone number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

32.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Bradford anticipates the need to amend the Class definitions following appropriate discovery.

33.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

34.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)    whether Defendant NYLIFE placed multiple calls to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to place those calls;

(b)    whether the calls to Plaintiff and other consumers were made for telemarketing purposes;

9

(c) whether the calls constitute a violation of the TCPA; and

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

35. **Adequate Representation**: Plaintiff Bradford will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Bradford has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Bradford and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Bradford nor his counsel have any interest adverse to the Class.

36. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Bradford. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Bradford and the Do Not Call Registry Class)**

37. Plaintiff Bradford repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference.

38. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

39. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

40. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

41. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

42. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter

11

alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

43. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bradford, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Bradford as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Bradford requests a jury trial.

Respectfully Submitted,

**RADLEY BRADFORD**, individually and on behalf of all those similarly situated individuals,

DATED this 8th day of March, 2022.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC

11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Pro Hac Vice Forthcoming*